

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Thos. A. Wheat
County Attorney
Liberty County
Liberty, Texas

Dear Sir:

> Opinion Number O-1862
> Re: After private drains are
> constructed in accordance with
> Article 8153, shall such private
> drains be repaired and maintained
> by the Drainage Commissioners out
> of Drainage District funds?

We have your letter of January 15, in which you request our opinion on the above captioned question, and the facts underlying your question are, briefly, as follows:

"That Liberty County Raywood Drainage District Number 2 legally established and created in accordance with Title 128, Chapter 7 of the Revised Civil Statutes has been and is functioning as a drainage district pursuant to such law, and that under authority of Article 8153 of said title, private drains have been constructed which find as their ultimate source of outlet canals, drains, ditches and levees, constructed by the district."

Your question is:

"Whether or not these so-called private drains, constructed in accordance with Article 8153, shall be maintained and repaired by the Drainage Commissioners out of the Drainage District funds, to-wit, the Maintenance Fund, or does the maintenance and repairing of said so-called private drains have to be done by the person owning the land who had the same constructed at his own expense in accordance with said article."

COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

It is our opinion that the maintenance of said private drains must be at the expense of the person or persons who constructed them, and that the commissioners of the drainage district are not authorized to expend funds of the district obtained through a maintenance tax levy upon the owners residing within the district.

In support of this conclusion we wish to state that as a general proposition of law, a drainage district organized pursuant to statute is a subdivision of the State which exercises granted powers within its territorial jurisdiction, and that its duties are public, not private, in their nature. They are political or public subdivisions of the State, created for a special purpose and exercising only such powers as are expressly granted or which are essential and incident to the exercise of expressed powers given. When a drainage district is organized pursuant to Title 128, Chapter 7, of the Revised Civil Statutes of 1925, we think there is only one purpose for which it is created, and that is to drain the land within the district, or to erect and maintain canals and ditches, to control floods and other flowing waters. It is, therefore, a necessary conclusion that if the organization is to be competent to accomplish its destined purpose, there must be some authorized manner in which the required costs are to be met, and it is a basic principle of any kind of taxation that those should pay who are benefitted. We think that the Act authorizing the establishment of drainage districts contemplates the improvement of the area within the drainage district in such manner as the interest at large within said district will best be served. Article 8103 reads as follows:

"If at the hearing it appears to the court that the drainage of such district is feasible and practicable, and that it is needed, that the drainage would be conducive to the public health or would be a public benefit or a public utility, then the court shall so find. But if that court finds any of said issues in the negative, it shall dismiss the petition at the cost of the petitioners. The findings shall be entered of record."

Honorable Thos. A. Wheat, page #3

We think the language in this article is indicative of the public benefit contemplated by the entire Act.

Article 8137 provides that the commissioners shall annually file a detailed report of the condition of the improvements theretofore made in the district, with an estimate of the probable cost of maintenance and needed repairs during the ensuing year, and Article 8138 prescribes the manner of levying the tax for both bonded indebtedness and maintenance and states that sufficient taxes shall be collected upon all property in the district to maintain, keep in repair and to preserve the improvements in the district. We think this reference to "the improvements in the district" means only such improvements as have been made pursuant to the maps and profiles of drainage ditches and other improvements described in Article 8126 and that it does not in any way have reference to drainage ditches constructed by private owners in accordance with Article 8153.

Article 8154 provides that "the drainage commissioners shall keep the canals, drains, ditches and levees and other improvements made hereunder in repair and shall have general authority to supervise and control the construction and maintenance of same." In the Acts of the Thirty-second Legislature, 1911, this provision was Section 42 of Chapter 118, and the article next above quoted was Section 39 of said chapter, and Sections 40 and 41 were pertinent parts of that Act. These last two sections were carried forward into the 1911 Revised Civil Statutes as Articles 342c and 342d of the Penal Code, with Article 342c being subsequently repealed. Article 342d being carried forward to the 1925 revision as Article 852 of the Penal Code. Each of said original sections, when speaking of improvements within the drainage districts, used this language:

"Constructed, repaired or improved under the provisions of this Act, for the purpose of drainage * * * *"

and from which we have concluded that Article 8154, wherein it uses the language "other improvements made hereunder", refers

295

Honorable Thos. A. Wheat, page #4

to such improvements as are authorized by this Act to be
made by the district as a district. It obviously was deemed
wise by the Legislature to permit private owners to construct
drain ditches to tie into the system provided by the district,
but the exercise of such privilege was limited by the terms
of this article.

It is our opinion that any of the maintenance tax
fund that may be expended by the commissioners for maintenance
of a privately owned drain ditch would constitute an unauthor-
ized use of such fund. In the case of Jefferson County Drain-
age District vs. McFaddin, 291 S.W. 322, affirmed Commission
of Appeals, 4 S.W. (2d) 33, the Supreme Court said:

"Money voted specifically for the purpose only
of constructing a drainage system within the
bounds of the drainage district, may be used only
for that purpose."

Then in the case of Carroll vs. Williams, 202 S.W.504, by the
Supreme Court, we find this further language:

" * * * As a matter of common honesty and fair
dealing, tax money taken from the people ostensibly
for one specified purpose, shall be expended as
needed for that purpose alone * * *."

We think the expenditure of public funds, such as the mainte-
nance tax funds of the drainage district, on the improvement
and maintenance of privately owned drainage ditches would
constitute a diversion of such funds under the law.

Trusting that this satisfactorily answers your ques-
tion, we are

APPROVED FEB 6, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

Very truly yours

ATTORNEY GENERAL OF TEXAS

BY Clarence E. Crowe
Clarence E. Crowe
Assistant

CLC-s

APPROVED
OPINION
COMMITTEE
BY BWB